HOPE H. CHRISTIAN, plaintiff in error, *vs.* JAMES B. RANSOME, defendant in error.

1. Where interrogatories were returned to a former Clerk in vacation and had the following entry on them:

"Received of M. W. Stamper the within package, who says that he received them from one of the commissioners, and that they have been unopened and unaltered.

"Sworn to and subscribed before me this 18th, March, 1871.

"W. H. DuBose, Clerk."

Which affidavit was not signed, and it was shown that the present and former Clerks, some time after the last term of the Court, found the package in an iron till, on the floor, in the corner of the Clerk's office,

and that it had remained in the possession of the present Clerk, unopened and unaltered, ever since, the depositions were inadmissible. (R.)

2. Mere inadequacy of price, or any other fact tending to show that the contract was unfair, unjust or against good conscience, will justify a Court of equity in refusing to decree a specific performance.   (R.)

Exception to interrogatories.   Specific performance.   Before Judge HARRELL.   Early Superior Court.   April Term, 1872.

Hope H. Christian filed his bill against James B. Ransome, containing the following material allegations: That complainant, on May 11th, 1863, purchased from defendant lot number seventy-four, in the sixth district of Early county, for the sum of $1,000, which was then and there paid; that complainant took defendant's bond to make title to said land by January 1st, 1864; that said land is of the value of $2,000; that said defendant has failed and refused to comply with the condition of his said bond: Prayer, for specific performance.

The defendant answered the bill, substantially, as follows: Defendant denies that complainant purchased any lot of land from him for $1,000; defendant admits that he executed the bond set forth in the bill; that the circumstances under which said bond was executed, were as follows: that, defendant having a valid title to lot number seventy-four, and Martin W. Stamper having William L. Mitchell's bond to lot number eighty-five, in the same district, defendant and Stamper agreed to exchange lots; Stamper was to execute to defendant his bond to make titles to lot number eighty-five by the 1st day of January next following; defendant was to execute a bond for titles to Stamper, conditioned to make him a title to lot number seventy-four on said January 1st next, and to give his note for $1,000, payable on the same day, as the difference in value between the lots; that the terms were not reduced to writing immediately, but shortly thereafter; complainant came to defendant's house, bringing a written communication from Stamper, requesting defendant to make the

Christian *vs.* Ransome.

bond for titles to complainant; that complainant, at the same time, delivered to defendant Stamper's bond to lot number eighty-five; that defendant delivered to complainant his note, payable to Stamper for $1,000 on said January 1st; that, there being no one present to attest the same, the execution of said bond was deferred; that shortly thereafter, complainant again came to defendant when he was sick in bed, and unable to attend to business, and presented a bond purporting to be drawn in accordance with the aforesaid agreement, and requested defendant to sign the same; that defendant, believing said bond to be as represented, signed the same without an examination; that before the said January 1st, complainant again came to respondent and stated that Stamper would be sure to comply with his bond to defendant and requested defendant to pay the amount of said note to him, although not yet due; that defendant paid said note; that defendant never received one dollar from anybody for lot number seventy-four; that Stamper has never complied with his bond, and, as defendant is advised and believed, has never paid Mitchell for said lot number eighty-five, nor obtained a title thereto; that defendant is now, and has always been ready to carry out the contract as made; that complainant was fully acquainted with all of the aforesaid facts, and received defendant's $1,000 for no consideration whatever: Prayer, that complainant may be decreed to deliver up defendant's bond, and to refund the $1,000.

Defendant afterwards amended his answer, substantially, as follows: That defendant, at the time of the execution of said bond to complainant, did not intend said bond to be unconditional, but, on the contrary, did intend it to be conditional, on the execution of a title by Stamper to defendant to lot number eighty-five; that said absolute bond was obtained by fraud, complainant pretending that said bond was drawn in accordance with the previous agreement between Stamper and defendant; that said Stamper has since died insolvent, and was insolvent at the time of the filing of said bill; that defendant has never had possession of lot number eighty-five

nor delivered possession of lot number seventy-four ; that defendant tenders the bond which Stamper executed, if complainant will deliver up defendant's bond.

The jury found for the defendant, and directed that the bond from defendant to complainant be delivered up to defendant, and the bond from Stamper to defendant be delivered up to complainant.

Complainant moved for a new trial upon the following grounds, to-wit :

1st. Because the Court erred in the following ruling : A set of interrogatories was on file in the Clerk's office containing the testimony of M. W. Stamper, which was delivered by him to the former Clerk in vacation and had not been opened. The interrogatories were sealed up, backed, directed and closed according to the rule of Court, with the following entry thereon, to-wit :

"Received of M. W. Stamper the within package, who says that he received them from one of the commissioners, and that they have been unopened and unaltered.

"Sworn to and subscribed before me this March 18th, 1871.

[Signed] " W. H. DuBose, Clerk."

Complainant proved, by the present Clerk, that he, some time after the last term of the Court, and DuBose, the former Clerk, went into the Clerk's office, and, in looking for papers, they found the package in an iron till on the floor in the corner of the room, and that DuBose then delivered it to him, and it had remained in his possession ever since, unopened and unaltered. The Court ruled the deposition inadmissible.

2d. Because the jury found contrary to the following charge of the Court: " If the defendant sets up that the contract was procured by fraud, he must allege and prove such acts or representations on the part of complainant as amounts to fraud. Fraud, when set up as a defense to a written contract sued on, cannot be inferred or presumed. The acts or

declarations which constitute the fraud must be proven. Unless the defendant has proven that Dr. Christian procured the bond for title as it was written, by declarations that were false, or by acts that were deceitful, and by which Ransome was actually misled and deceived, then the proof of fraud fails, and the jury cannot set aside the contract on the ground of fraud. If the jury believe, from the evidence, that Stamper made his bond for title to Ransome for lot number eighty-five, and that Ransome accepted this bond without being induced to do so by fraud, as alleged, and that he gave to Christian his bond for title without conditions, and that he was not induced to do so by fraud, then he is bound by the contract to Christian, and the fact that Stamper afterward failed or refused to comply with his bond to Ransome, does not excuse Ransome from complying with his bond to complainant. If he accepted Stamper's bond without fraud, his remedy was on the bond."

3d. The Court erred in refusing to give the following charge as requested : " The jury must look to the bond for titles given by Stamper to Ransome to ascertain what Stamper agreed to do. They must look to the bond given by Ransome to Christian to find out what Ransome agreed to do. The writings are the evidence of the contract between the parties, and they are bound thereby unless the evidence sworn to on the trial will warrant the jury in setting aside the written contract and setting up a different contract as actually agreed on between the parties, or that something was left out of the writing, or that a different contract was written or signed by mistake of both parties, or through the fraud of complainant."

4th. Because the Court erred in giving the following charge : " A contract, the specific performance of which will be enforced by a Court of equity must be a fair and just one, and the party seeking to have it enforced must clearly prove the contract, and also compliance on his part with his obligation. If he was to pay money, he must prove the payment. If, in this case, the condition of the agreement was

that Stamper was to convey lot number eighty-five to Ransome, and Ransome was to convey lot number seventy-four to Christian, Christian must show that Stamper has executed a conveyance to lot number eighty-five before he can require Ransome to convey lot number seventy-four to him. If Ransome did not know the contents of the bond he made, whether he was prevented by sickness, mistake or fraud, he is not bound by it; and if it was not written, as the parties agreed that it should be, it should be reformed to meet the intentions of the parties just as though it had been written as intended. If Ransome understood the contract he made only bound him to execute titles to lot number seventy-four to Christian, when Stamper should make him titles to lot number eighty-five, and Christian knew that Ransome so understood it, it is to be considered as Ransome understood it even if Christian understood it differently. If the jury believe, from the evidence, that the agreement between the parties was that Ransome was to make a bond for titles conditioned on Stamper's making him titles to lot number eighty-five, but that Christian, by fraud on his part, obtained from him an absolute bond, they must find for defendant."

5th. Because the Court erred in the following charge to the jury: "It is insisted for the complainant that the bond of Ransome to him contains all the contract; that the consideration therein expressed was all of the consideration for said bond; that it has been paid; that he has fully complied with his part of the contract, and is therefore entitled to a specific performance on the part of Ransome of his part. For the respondent it is insisted that the bond does not contain all the considerations of the contract as actually entered into and intended by the parties; that by the fraudulent contract of the complainant and Stamper, he was induced to sign the bond without examination or knowledge that it was absolute, and that the consideration for his bond was the making to him by Stamper of a good title to lot number eighty-five, all of which Christian not only knew but was concerned and interested with Stamper in the negotiations and final consumma-

tion of the contract.   If you believe from the evidence which
has been submitted to you, that the only consideration to the
bond of Ransome to Christian was the one expressed therein,
and had been received by Ransome; that complainant has
fully performed all he was to do, then complainant is entitled
to a specific performance on the part of Ransome of his con-
tract, and you should so find.   But if you should come to
the conclusion from the evidence that the consideration named
in the bond was not the only consideration therefor, but by
the fraud of Stamper and Christian part of the consideration
was left out of the bond, and that the real consideration there-
for was that Stamper should make to Ransome a good title
to lot number eighty-five, then, until that is done, the com-
plainant is not entitled to a specific performance, and you
should so find.   The complainant is not entitled to a specific
performance on the part of Ransome until the terms on his
side are complied with.   In determining this question you
should consider all of the evidence submitted to you by both
parties.

The Court charges you that a written contract between par-
ties cannot be added to, altered or changed by oral testimony,
unless attacked for fraud, mistake or accident, and that unless
the evidence in this case shows that by the fraudulent con-
duct of Stamper or Christian, or both, the bond of Ransome
did not contain all of the contract between them, or by accident
or mistake stipulations were left out, and by this means the
contract intended by the parties was not expressed, the bond
is to be taken as expressing the contract.   In coming to a
conclusion on this question, the acts of Ramsome, Stamper
and Christian and their connection with each other are all to
be considered.   By the amended answer the respondent prays
for a rescission of the entire contract and a decree for the re-
funding of the $1,000 paid by Ransome, on the ground of the
alleged fraud of Stamper and Christian, in the procurement
of the bond.   If you believe, from the evidence, that Stamper
and Christian combined and confederated together to practice
a fraud upon Ransome, and by fraud and over-reaching ob-

Christian *vs.* Ransome.

tained his bond for title to lot number seventy-four and the $1,000, and that they were jointly concerned therein, you could decree such a rescission and repayment; but unless the evidence should satisfy you not only of a fraud upon Ransome as alleged, but also the connection of Christian therewith, and that he was jointly concerned with Stamper in its perpetration, you could not make such a decree against him, (Christian.) Christian would not be liable for money paid to Stamper even if there was a fraud committed by Stamper, unless he was a party to the fraud, or in some way connected with it."

6th. Because the jury found contrary to the evidence and the principles of equity and justice.

The evidence is omitted as unnecessary to an understanding of the decision of the Court.

The motion for a new trial was overruled and plaintiff in error excepted.

HOOD & KIDDOO; H. FIELDER, for plaintiff in error.

JOHN T. CLARK, for defendant.

WARNER, Chief Justice.

This was a bill filed by the complainant against the defendant, praying for the specific execution of a contract for the sale of lot of land number seventy-four, in the sixth district of Early county. On the trial of the case the jury found a verdict for the defendant. A motion was made for a new trial on the several grounds set forth in the record, which was overruled by the Court, and the complainant excepted. In our judgment the objection to the interrogatories of Stamper was well taken and they were properly suppressed by the Court. The interrogatories were returned by the witness Stamper to a former Clerk of the Court in *vacation,* and had the following entry on the back of them: " Received of M. W. Stamper the within package, who says that he received them from one of the commissioners, and that they have been unopened and

unaltered. Sworn to and subscribed before me, this 18th of March, 1871, W. H. DuBose, Clerk." This affidavit of Stamper was not signed by him. It was shown by the present Clerk, that he, some time after the last term of the Court, and Dubose, the former Clerk, found the package in an iron till on the floor in the corner of the room in the Clerk's office; that Dubose handed it to him, and that it had been in his possession ever since unopened and unaltered. The former Clerk (whose absence was not accounted for) was not introduced to account for the package from the time he received it in vacation up to the time it was found in the iron till upon the floor and delivered to the present Clerk. In the first place, the interrogatories were not received in *open Court*, as required by the 3834th section of the Code. Secondly, Stamper did not sign the affidavit when he returned them to the Clerk in vacation; and thirdly, the custody of them was not accounted for from the time they were received by the former Clerk in vacation, until found and handed to the present Clerk. To allow interrogatories to be received and read in evidence under this statement of facts would be to establish a dangerous precedent, the more especially when the interrogatories, as in this case, were returned by the witness himself, who was *interested* in the litigation as is shown by the record. It appears from the evidence had on the trial, that the defendant, on the 11th day of May, 1863, executed his bond to the complainant in the sum of $2,000, conditioned to make him a title to lot number seventy-four, in the sixth district of Early county, by the first day of January, 1864. There is no special allegation in the complainant's bill for invoking the aid of a Court of equity to decree a specific execution of this contract, or why his common law remedy for a breach of the bond was not adequate and complete; but the defendant does not appear to have raised that question; he answered the bill and alleges that he made a contract with Stamper to exchange with him lot of land number seventy-four for lot number eighty-five; that as Stamper had not paid Mitchell's estate for lot eighty-five, he did not have the title

then to convey to the defendant, but would in a short time pay the money and procure the title, and in the meantime each party should execute their bonds to make titles to the respective lots of land. The negotiation for the exchange of the two lots of land was mainly conducted by Christian on the part of Stamper. On the 30th April, 1863, Stamper wrote the following letter to the defendant:

"MR. JAMES B. RANSOME—*Sir :* Upon consultation, and my own opinion, it will be well to give bond, as I have no deed. You can make Dr. Christian a deed or give him a bond to make title when I make you a title. I make a bond to make title when the note is due, you make *one* and send the bond by the Doctor."

It is quite clear, we think, that the trade was made for the exchange of the lots of land between the defendant and Stamper; they in fact were the contracting parties. Stamper executed his bond to the defendant on the 28th of April, 1863; conditioned to make him a title to lot number eighty-five by the first day of January next, after the date thereof.

The defendant alleges, in his answer, that the complainant fraudulently procured the bond to be made payable to himself, instead of to Stamper, with whom the contract was made unconditional, as therein specified, without reciting the terms of the contract between him and Stamper for the exchange of the two lots of land, and that Stamper never paid the money to the Mitchell estate, and departed this life without having procured a title to lot number eighty-five, and that ·it would be inequitable and unjust to require the defendant to specifically perform the contract under this statement of facts.

On the trial the evidence was conflicting as to the manner in which the bond to the complainant was procured from the defendant, but there is one leading and controlling fact stamped on the face of this transaction, and that is, that the contract for the exchange of the lots of land was made between Stamper and the defendant, whatever part Christian, the complainant, may have acted in the matter. Mere inad-

equacy of price, though not sufficient to *rescind* a contract, may justify a Court in *refusing* to decree a specific performance. So also any other fact, showing the contract to be *unfair* or *unjust*, or against *good conscience*. Code, section 3134. In view of the facts of this case, as disclosed in the record, we cannot say that the verdict of the jury was contrary to the evidence and the principles of justice and equity, nor do we find any material errors in the charge of the Court to the jury, or in the refusals to charge as requested. In our judgment, the motion for a new trial was properly overruled.

Let the judgment of the Court below be affirmed.